Pearson, J.
 

 It will be convenient to consider them under two heads. First, in reference to the title of John*
 
 *432
 
 son; and second, in reference to the title of Elizabeth Savage, derived from Johnson. As to Johnson’s title, the' plantation contains two tracts; one of three hundred acres on the river, which is mostly cleared and in cultivation ; and the other of three hundred and fifty acres, lying back in the hills and mostly wood-land. The two tracts do not adjoin, being separated by a narrow strip of land, but they were sold together and the one is necessary to the other for a supply of wood for fencing, fires. &c
 

 In 1785 a grant issued to Johnson for the three hundred acre tract; but a grant had issued to one Hall in 1751, whigh covers the whole of this tract. In 1839 a grant issued to Johnson for the three hundred and fifty acre tract; but a grant had issued to one Whitfield in 1783. which covers the larger part of this tract; and in 1783 a grant had issued to one Colson which also covers 17§ acres of this tract. The part covered by this grant is still in woods. Johnson by his tenants, cultivated the three hundred acre tract and got wood from the three hundred and fifty acre tract until 1792, when he made a contract of sale to Mrs. Nesbitt, who resided upon the three hundred acre tract and used the other tract for wood until L793, when she married one Blinett, who lived upon the three hundred acre tract and used the other for wood until 1823. Mrs. Nesbitt paid for the land before her marriage with Blinett, but did not take a deed from Johnson, and died in 1796, having had a child, born alive, but which died soon after its birth. Blinett, after her death, claimed as tenant by the curtesy, and, besides the possession above stated, he settled his daughter Mrs. Lanier upon the three hundred and fifty acre tract, who cleared afield and lived on the land. The house was near the Salisbury road, and both the house and field were upon that part of the tract, which is covered by the Whitfield grant, but her possession did not extend to the part covered by the Colson grant. Mrs. Lanier continued upon
 
 *433
 
 the place until her death in 1819, when the field was turned out, and no one had possession of this tract, except for the purpose of getting wood to support the plantation on the other tract, until the plaintiff took possession in January 1831. Prior to the year 1833, Mrs. Savage, the. mother of the defendants, Charles, Augusta, and Samuel, and who was the only child of Mrs. Blinett by a former husband, one Nesbitt, had filed a bill against Johnson and Blinett; in which she alleged, that her mother, who was her guardian, bought the land for her and paid for it with her money; and in 1833 a decree was entered, in pursuance to which Johnson conveyed the land to Mrs. Savage, and Blinett released to her all claim as tenant by the curtesy. Mrs. Savage held possession in the same way, that Blinett had done, until her death in 1830, when the land was purchased by the plaintiff, who was in possession before the sale, as tenant, and, after the sale, has continued in possession up to this time. In 1831, the plaintiff built a house and cleared a field on the three hundred and fifty acre tract, near where Mrs. Lanier had lived, and he has lived there ever since.
 

 One of the plaintiff’s exceptions raises a question as to the validity of Johnson’s title: the whole of one tract arid the greater part of the other being covered by elder grants. The reply is, that the length of possession, from which every presumption necessary to sustain the title, under which it has been enjoyed, will be made, and the statute of limitations, have not merely taken away any right of action under those old grants, but have perfected the Johnson title. As to the three hundred acre tract, there has been a continued possession under the Johnson title for about sixty years, during which time Hall, to whom a grant issued in 1751, has not been heard of, and neither he, or any one claiming under him, has ever set up claim to the land. It is said, that, for ought that appears, Hall may have died before Johnson’s grant is
 
 *434
 
 sued leaving an heir under disabilty, and by an accumulation of disabilities it may be, that some person may now have a right to set up his title. Such an event is 'possible, but it is a remote possibility; and, although Equity will not compel a purchaser to accept a doubtful title, the doubt must be a reasonable one.
 
 Emery
 
 v.
 
 Gracock 6
 
 Mad. 41.
 
 Hillory
 
 v.
 
 Waller
 
 13 Ves,
 
 249 :
 
 Such as would deter a prudent man, who wished to buy,
 
 from
 
 .making the purchase, especially, when, as in this case, the purchaser takes possession without objection until long afterwards.
 

 As to the three hundred and fifty acre tract, possession was held of that part which is covered by the Whitfield grant, by Mrs. Lanier, claiming under Blinett, who held under the Johnson title for more than seven years, prior to the year 1819; and possession. has been held by the plaintiff, himself, for more than seven years before this bill was filed ; and besides this actual possession, the land has been used during the whole time by the persons, cultivating the other tract, for the purpose of getting wood. The same doubt does not exist as to the person entitled to the Whitfield grant, as was suggested'in reference to the Hall grant; for, it is shown, that Whitfield’s title belongs to one Wall, who brought an action of ejectment against the plaintiff, claiming all that part of the three hundred and fifty acre tract, which is covered by the Whitfield grant. The case was tried
 
 several times
 
 in the Court below, and once in this Court, and was finally decided in favor oí the Johnson title. It appears from the plat, filed as an exhibit, and the proof, that the possession of Wall did not extend over any part of the three hundred and fifty acre tract, and there was nothing to prevent the possession of the plaintiff from perfecting the Johnson title.J The law upon that question is clear and there is no doubt as to the fact of possession. It is true, that a recovery in ejectment is not of'itself sufficient to
 
 *435
 
 show, that the title is good; for a new action may be brought, but the pendency of the action is calculated to elicit the facts, and in this case the title is put beyond question by the operation of the statute of limitations. It is objected, that a purchaser should not be required to take a title, which has been made good by the statute. We see no force in the objection. So that the title be good, it matters not how it is made so.
 

 As to seventeen and a half acres of this tract, which is covered by the Colson grant, the Johnson title is not good ; for, this parcel being in woods and no possession being taken of it by those claiming under the Johnson title, so as to interfere with the Colson grant, the continued possession has been in Colson and those claiming under him, as bis was the older title. But taking offthis parcel does not so materially affect the value of the rest or make such a substantial alteradora in the subject of the contract, as to entitle the plaintiff to have it rescinded, because compensation can be made by making a deduction of the value of this parcel; and it must be declared to be the opinion of this Court, that the plaintiff has an equity to have a credit entered upon his bonds for such sum as may be the value of this parcel, compared with the residue, upon the supposition that the whole is worth $4500.
 

 Second ; as to the title of Mrs. Savage.
 

 Mrs. Nesbitt, the mother of Mrs. Savage, had two children by a former husband — John Colson and Jane, who are both living — Jane married one Norwood, who is dead. John Colson and Norwood and wife were parties, plaintiffs, to the bill filed by .Mrs. Savage against Johnson and Blinett, and are concluded by the decree, under which Johnson conveyed to Mrs. Savage, and cannot be heard to impeach it after so long an acquiescence. Blinett has released his claim as tenant by the curtesy, and Mrs. Nor-wood, since the death of her husband, has also released. This makes it unnecessary to decide the many interesting
 
 *436
 
 questions, that were raised in the argument upon the supposition, that the decree did not conclude them. The fact, that they were parties, seems to have been over-looked in framing the exceptions. The exceptions to the report of the Master are over-ruled, except as
 
 to
 
 the seventeen and a half acres.
 

 It was further insisted, that the plaintiff had a right to have the contract rescinded, because there was unfair bidding, or “puffing,” as it is termed. Before the sale, Charles Savage and Lyde contracted to let one Wall and Waddell have the tract for $3000, whether it sold for 'more or less, and for this purpose Charles Savage was to buy the land at the Clerk and Master’s sale, and, if he was forced to bid more than $3000, he and Lyde were 'to lose, each a third of the excess, and Wall and Wad-dell were to pay the other third to Samuel Savage, who was under age and could not be bound by the agreement. ‘When the land was run up to $4000 by the plaintiff, Wall and Waddell released Savage and Lyde from their contract, and Savage afterwards continued to bid, until it went up to $4300 and was struck off to the plaintiff.
 

 If Savage, after the release, continued to bid, not for the purpose of buying the land, but with a view to run' it '"up on the plaintiff, in pursuance of an understanding between himself and Lyde, acting for themselves and their infant brother, upon this fact being shown, the Court would not have confirmed the sale ; and it may be, that, if it had been properly charged and in apt time, it would have sustained a bill to rescind the sale But there are no sufficient allegations in the present bill to raise the question. There is no allegation of an understanding between Savage and Lyde to run the land up upon the plaintiff; and, for aught that is alleged, Savage may have continued, to bid for the purpose of buying the land for ' himself, as he had a right to do. There is no allegation, ‘ that the plaintiff was, by reason of-the bidding, induced
 
 *437
 
 to give more for the land than it was worth, or than he had before made up his mind to give. And there is no allegation as to the time when these facts came to the knowledge of the plaintiff, so as to take the cause out of the principle laid down in
 
 McDowell,
 
 v.
 
 Simmons
 
 6 Ire. Eq. 278. The allegation is simply, that, after the release, “Savage was the principal bidder in running said land up to $4500 upon your orator.”
 

 The injunction must be dissolved, except as to the sum of $261, which sum is retained, until the report is made as to the seventeen and a half acres. The plaintiff must pay all costs. There must be a reference to ascertain the value of the seventeen and a half acres, compared with the whole land, supposing the whole worth $4500.
 

 Per Curiam.
 

 Decree according!}'.